SCHEB, Judge.
Camella McPhee appeals the trial court’s order distributing 681 shares of Bell South stock to Hazel D. Bahret, the residuary beneficiary under the will of William Bahret, Jr. McPhee argues she was entitled to receive the stock as part of a specific devise under the decedent’s will. We agree.
William Bahret executed a will on August 20, 1981. In the third paragraph, he provided:
I hereby specifically give and bequeath those shares of stock now owned by me, both common and preferred, including all debentures, stock dividends and stock splits, to the following named beneficiaries:
A. All of my shares of American Telephone and Telegraph Company to CARMELA McPHEE, daughter of my deceased wife, IRENE BAHRET, per stirpes.
Subsequent to the execution of the will, but prior to Mr. Bahret’s death on December 19, 1984, American Telephone and Telegraph (AT & T) resolved a long-pending lawsuit in which it was to undergo massive reorganization. AT & T was required to sever connections with its twenty-two holding companies which would then be organized into seven regional holding companies. As a result, shareholders of AT & T received one share of each of the seven regional holding companies for every ten shares of AT & T stock they owned.
Subsequent to January 1, 1984, shareholders were given certain options as to their holdings of the divested shares: under option A the number of whole divested shares which they held on January 1, 1984, would remain unchanged; and under option B they could sell the shares and the proceeds from the sale would be used to obtain shares in whichever of the seven regional holding companies the shareholder selected. Mr. Bahret selected option B and changed all of the shares he received as a result of the divestiture into Bell South stock. Consequently, at the time of his death, Mr. Bahret owned 452 shares of AT & T stock and 681 shares of Bell South stock.
As noted, the trial court ordered distribution of the Bell South stock to the Hazel D. Bahret, the residuary beneficiary. Appellant McPhee, the specific beneficiary, argues that her claim of entitlement to the Bell South stock is supported by section 732.6Q5(l)(c), Florida Statutes (1985) Bah-ret, the appellee, seeks to sustain the trial court’s order by reliance on section 732.-605(l)(b).
We begin our analysis by a review of section 732.605(1) in its entirety. That statute provides:
If the testator intended a specific devise of certain securities rather than their equivalent value, the specific devisee is entitled only to:
(a) As much of the devised securities as is a part of the estate at the time of the testator’s death.
(b) Any additional or other securities of the same entity owned by the testator because of action initiated by the entity, excluding any acquired by exercise of purchase options.
(c) Securities of another entity owned by the testator as a result of a merger, consolidation, reorganization, or other similar action initiated by the entity.
The cardinal rule in construing the provisions of a decedent’s will is to accomplish the intent of the testator. In re Barrett’s Estate, 159 Fla. 901, 33 So.2d 159 (1958); see also § 732.6005(1), Fla.Stat. (1985). The language of Mr. Bahret’s devise clearly indicates he intended that McPhee was to receive all of his shares in AT & T, including all debentures, stock dividends, and stock splits. Moreover, under section 732.605(l)(c) a specific beneficiary of certain securities is entitled to securities of another entity owned by the testator as a result of a merger, consolidation, reorganization or other similar action initiated by the entity. Admittedly, section 732.605(l)(c) does not address with particularity such a sophisticated corporate re *1321 structuring as occurred in the historic divestiture of AT & T. However, we perceive the basic purpose of the statute as enabling the testator’s intention to be fulfilled by distributing to a specific beneficiary securities that have changed only in form and not in substance.
Our interpretation is in accord with In re Estate of Watkins, 284 So.2d 679 (Fla.1973). There the court held “that when there is no act on the part of a testator manifesting a change of intent, there is no ademption of the property bequested if it is in existence or can be traced.” Id. at 681. Here, the testator never manifested a change of intent; he merely selected between certain options imposed upon him by AT & T and only the form of his original investment changed. This, we think, supports the appellant’s position that it was the decedent’s intention to devise to her the economic substance of the AT & T stock.
We reject the appellee’s contention that the disposition of these shares is controlled by section 732.605(l)(b), as being shares that were acquired by the exercise of purchase options. The testator never made any purchases which increased his original investment in AT & T. He merely opted to have all his stock in six of the seven regional holding companies sold and the proceeds used immediately to purchase Bell South stock (the seventh regional holding company). Furthermore, we do not find any significance to the fact that after the decedent’s death the federal income tax return filed on his behalf by the residuary beneficiary reported the transaction as a sale. Rather, we view the substance of the transaction as being a conversion of existing stock.
The effect of the trial court’s decision here is to substantially lessen the economic value of the shares of stock that the decedent devised to McPhee. Accordingly, we reverse the trial court’s order which distributed the Bell South stock to the residuary beneficiary and remand with directions to the court to order that that stock be distributed to the appellant.
GRIMES, A.C.J., and FRANK, J., concur.